**CLEARVIEW PROPERTIES, L.P.; Michael Starcher, Trustee for the Crown Hill Trust; Craig Walker, d/b/a Clearview Properties, L.P.; and Clearview Investments, LTD., Appellants,**

v.

**PROPERTY TEXAS SC ONE CORP., Clarion Partners, L.L.C., Granite Partners, L.L.C., Triple Net Properties, L.L.C., T. Reit, L.P., and T. Reit, Inc., Appellees.**

No. 14–06–00716–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 29, 2009.

Supplemental Opinion on Overruling of Rehearing May 14, 2009.

Barton Michael Reeder, William L. Wolf, Rashee Raj, Dallas, for appellants.

Floyd F. Honea II, Jon Collins Rice, Hunter Mac Barrow, James R. Hawkins, Erin Jones Brown, Robert S. Harrell, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and BROWN.

## OPINION

LESLIE B. YATES, Justice.

Appellants Clearview Properties, L.P.; Michael Starcher, Trustee for the Crown Hill Trust; Craig Walker, d/b/a Clearview Properties, L.P.; and Clearview Investments, Ltd. (collectively "Clearview") appeal from the trial court's order granting summary judgment on their claims against appellees Property Texas SC One Corp., Clarion Partners, L.L.C., Granite Partners, L.L.C., Triple Net Properties, L.L.C., T. Reit, L.P. ("TRL"), and T. Reit, Inc. ("TRI") and awarding attorney's fees in favor of Property Texas and TRL. We affirm the trial court's summary judgment on Clearview's claims and the attorney's fees award in favor of Property Texas but reverse the attorney's fees award in favor of TRL and remand for further proceedings.

### I. BACKGROUND

Property Texas owned an office building in Houston that it leased to the Federal Bureau of Investigation ("FBI"), and it employed Clarion as its property manager. Property Texas decided to sell the building and hired Granite as its real estate broker. In 2002, Clearview signed a contract with Property Texas to buy the property. The parties agreed to amend the contract several times, with the fifth and final amendment ("the fifth amendment") being executed on January 17, 2003. The fifth amendment required Clearview to obtain financing to purchase the building by January 29, 2003, and if Clearview could not do so, it could terminate the contract and recover only its escrow deposit.

Clearview planned to purchase the property and then immediately "flip" it to TRL for a profit. To this end, Clearview entered into a separate contract with TRL. However, Clearview was not able to obtain financing because Deutsche Bank, the prospective financier, would not make the loan itself and could not convince another lender to accept the loan as part of a loan sales package because it was uncomfortable with the entire flip transaction. Consequently, neither the Property Texas/Clearview contract nor the Clearview/TRL contract were ever consummated.

Two events happened that are at the center of this litigation. First, Clearview learned on January 30, 2003 for the first time about an amendment to the Property Texas/FBI lease ("SLA 12"). Clearview asserts that SLA 12 was a scam created to conceal falsified documents submitted in connection with reimbursement for finish-out space leased by the FBI. Clearview also asserts that if it had known of SLA 12, it would not have entered into the fifth amendment to its contract with Property Texas. Second, Property Texas learned of Clearview's deal to immediately resell the property to TRL when one of its employees, in the course of conducting due diligence on the Clearview/TRL deal, told Triple Net, an affiliate of TRL, of the deal, and Triple Net then contacted the building's property manager, who told Granite. According to Clearview, this knowledge made Property Texas reluctant to enter into another contract amendment to extend the closing time when Clearview had not yet secured financing by the due date and instead enter into a sales contract with

Triple Net, though this sale never went through either.

Clearview sued nearly everyone involved in the proposed sale of the building. As relevant to this appeal,[1] Clearview sued Property Texas for breach of contract, arguing that its failure to disclose SLA12 earlier breached its contractual obligations to make reasonable efforts to furnish all amendments to the Property Texas/FBI lease and to promptly correct any inaccuracies in prior representations. Clearview also asserted claims against Property Texas, Clarion, and Granite under various fraud theories, claiming that they intentionally failed to disclose SLA 12 and that if Clearview had known about SLA 12, it would not have entered the fifth amendment, which required Clearview to pay $20,000 in consideration and limited its damages to the return of escrow money. Finally, Clearview sued TRL, TRI (which is TRL's general partner), and Triple Net (collectively "the Triple Net defendants"), arguing that the chain of events that led to Property Texas's discovery of the Clearview/TRL contract constituted breach of contract and tortious interference with a prospective contract.

Property Texas, Clarion, Granite, and the Triple Net defendants moved for traditional and no-evidence summary judgment, which the trial court granted. The trial court also awarded attorney's fees to Property Texas and TRL pursuant to their attorney's fees counterclaims for prevailing in the breach of contract claim. This appeal followed.

## II. ANALYSIS

### A. Summary Judgment

In its first issue, Clearview argues the trial court erred in granting summary

judgment on its fraud, breach of contract, and tortious interference claims against Property Texas, Clarion, Granite, and the Triple Net defendants. Appellees moved for summary judgment on both traditional and no evidence grounds. *See* TEX.R. CIV. P. 166a(c), 166a(i). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Shirvanian v. DeFrates*, 161 S.W.3d 102, 106 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). When we review a summary judgment, we take as true all evidence favorable to the non-movant; we also indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Grant*, 73 S.W.3d at 215. As to a no evidence summary judgment motion, the movant must state the specific elements of a cause of action for which there is no evidence. *Cuyler v. Minns*, 60 S.W.3d 209, 212 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). If the movant has identified specific elements he claims lack evidence, we must then determine de novo whether the non-movant has produced more than a scintilla of probative evidence to raise a genuine issue of material fact. *Allen v. Connolly*, 158 S.W.3d 61, 64 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

### 1. Fraud

---

1. Clearview also asserted other claims, including negligent misrepresentation, conspiracy, and tortious interference with an existing contract, but it has not pursued these claims on appeal.

Clearview sued Property Texas, Clarion, and Granite under various fraud theories, arguing that they intentionally prevented Clearview from knowing about SLA 12. Property Texas and Clarion moved for summary judgment, arguing, among other things that there was no evidence that Property Texas and Clarion knowingly concealed or misrepresented SLA 12 or intended to deceive Clearview. Granite similarly moved for summary judgment, arguing that there was no evidence that Granite knew of SLA 12 or intended to deceive Clearview and that the evidence conclusively established the contrary. The trial court granted summary judgment against Clearview on these claims.

On appeal, Clearview argues that if it had known about SLA 12, it would not have entered into the fifth amendment to its contract with Property Texas,[2] which cost it $20,000 in consideration and limited its remedies to return of its escrow money. Clearview's argument is unclear as to whether it is claiming that there was an affirmative representation that SLA 12 did not exist, that there was a failure to disclose SLA 12, or both. Under either theory, Clearview must prove both knowledge of SLA 12 and intent. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). Clearview failed to create a fact issue as to either of these.

■ As to knowledge, Clearview argues that Property Texas signed SLA 12 in 2000 so it must have known of it, but the Property Texas/FBI lease had numerous amendment documents, and there is no evidence that anyone at Property Texas involved in the transaction with Clearview actually knew of SLA 12 and was withholding that information. Clearview points to evidence that Granite knew of SLA 12 before the date Clearview signed the fifth amendment, but that evidence actually shows that Granite knew only of an unsigned, non-binding copy of the SLA 12. Thus, Clearview had no evidence creating a fact issue as to whether Clarion or Granite had knowledge of a signed, final version of SLA 12 before Clearview signed the fifth amendment.

■ As to intent, Michael Starcher, who was Clearview's principal representative and decision maker regarding the property, testified in his deposition that neither Property Texas, Clarion, nor Granite intended to injure Clearview with respect to SLA 12:

Q: Mr. Starcher, in, in referring to this misrepresentation that you claim was made to you about the SLA 12 not existing, you don't think that [Property Texas], Clarion or Granite did it to intentionally hurt Clearview or you, do you?

A: I don't think so.

Q: They didn't do it out of—well, they didn't—according to you, this misrepresentation was more a, a problem of their not doing their due diligence, right?

A: I believe that's—yes.

Q: You don't think that this misrepresentation was malicious, do you?

A: I don't believe so.

Q: .... You don't think that they had an intent to deceive you by this mis-

---

2. Clearview first produced summary judgment evidence of a link between the nondisclosure of SLA 12 and its entering into the fifth amendment in an affidavit filed with its summary judgment reply. The parties have argued extensively as to whether this affidavit was timely and whether this theory linking the SLA 12 with the fifth amendment is consistent with Clearview's pleadings, among other arguments. We need not decide whether we can appropriately consider this evidence and argument because even if we do, Clearview's claims fail for other reasons, as explained below.

representation of the SLA 12—regarding the SLA 12?

Q: That it was more just negligence on their part?

A: Yes.

. . . .

Q: . . . . Are you maintaining in this lawsuit, is one of your contentions in his lawsuit that Granite or any of the other defendants fraudulently concealed the existence of SLA 12 from plaintiff?

A: No.

Q: And then you've answered my next question is—which is: You don't have any evidence that Granite or any of the other defendants fraudulently concealed the existence of SLA 12 from plaintiff, correct?

A: Yes.

. . . .

Q: Do you believe—are you contending that [Granite] intentionally misrepresented to you the ex—the nonexistence of SLA 12?

A: I don't believe so.

Q: Okay. Do you believe that any of the defendants intentionally misrepresented to plaintiff the nonexistence of SLA 12?

A: I don't—no.

In an attempt to undo this damage, Starcher submitted a post-deposition affidavit. He stated that Property Texas and Clarion produced "nearly 1,000 pages of e-mail correspondence and other documents" unbeknownst to him on the day of his deposition and that based on "a brief opportunity to review some of the newly-produced documents," he believes that the defendants have engaged in intentional "fraudulent activity" and he would "now answer those deposition questions . . . differently." This affidavit is insufficient to overcome Starcher's deposition testimony and create a fact issue. Starcher does not identify which of the 1,000 pages of documents he reviewed, specify which deposition questions he would have answered differently, or state what his new answers would be. Without such details, Starcher's affidavit statements are merely conclusory and thus constitute no evidence. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004).

Because Clearview did not create a fact issue on the knowledge element of its fraud claims against Clarion, and Granite, or the intent element against Property Texas, Clarion, and Granite, the trial court did not err in granting summary judgment on these claims.

**2. Breach of Contract Against Property Texas**

Clearview sued Property Texas for breach of contract arising from the SLA 12 issue, arguing that Property Texas breached its obligations to make reasonable efforts to furnish all amendments to the Property Texas/FBI lease and to promptly correct any inaccuracies in prior representations. Property Texas argued that it was entitled to summary judgment because (1) Clearview's failure to secure financing for the deal caused its damages, rather than any conduct by Property Texas, and (2) under the fifth amendment to the contract, Clearview's sole remedy under the contract is return of its escrow money, which it received. We agree with Property Texas.

 If the alleged breach of contract did not cause the plaintiff's damages, then there can be no recovery for breach of contract. *See Tidwell Props., Inc. v. Am. First Nat'l Bank*, No. 14–04–00120–CV,

2006 WL 176862, at *3 (Tex.App.-Houston [14th Dist.] Jan. 26, 2006, no pet.) (mem. op.) (stating that absence of causal connection between alleged breach and damages sought precludes recovery for breach of contract); *Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 758 (Tex.App.-El Paso 2000, no pet.) (same). It is undisputed that Deutsche Bank, the only prospective financier, was unwilling to finance the transaction and that, according to Deutsche Bank's representative's testimony, this decision had absolutely nothing to do with SLA 12. Thus, regardless of Property Texas's actions, the contract would not have been consummated. *See Tidwell Props.,* 2006 WL 176862, at *3–5 (concluding that failure to disclose sublease did not cause breach of contract damages because deal fell through for reasons independent of failure to notify). Further, the fifth amendment limited Clearview's recovery to return of its escrow money, precluding its breach of contract claim in this suit as well. Clearview argues that we cannot consider the effect of the fifth amendment because it was fraudulently induced to enter into the fifth amendment, but we have already rejected this argument. For these reasons, the trial court did not err in granting summary judgment on Clearview's breach of contract claim against Property Texas.

### 3. Claims against Triple Net defendants

■ Clearview sued TRL for breach of contract, arguing that when TRL's employee, in the course of conducting due diligence on its deal with Clearview, contacted Triple Net, leading to a series of contacts resulting in Property Texas's discovery of the flip deal, TRL breached the non-contact and nondisclosure obligations in its contract with Clearview. However, as with Clearview's contract claim against Property Texas, because the deal fell through for reasons independent of any of TRL's conduct, TRL was not the cause of any damage to Clearview, and its claim was properly dismissed. *See Tidwell Props.,* 2006 WL 176862, at *3; *Abraxas Petroleum,* 20 S.W.3d at 758.

■ Clearview asserted a claim against Triple Net for tortious interference with prospective contract based on this same conduct, arguing that the conduct leading to Property Texas's discovery of the Clearview/TRL contract interfered with Clearview's ability to negotiate future contract extensions and amendments with Property Texas. To support a claim for tortious interference with prospective contract, the plaintiff must prove that the defendant's conduct was "independently tortious," that is, conduct "that would violate some other recognized tort duty." *Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 713 (Tex.2001). The conduct at issue here was part of the due diligence necessary to determine flood insurance issues, and Clearview makes no argument nor presents any evidence that this conduct, which was necessary to close the transaction, violated any recognized tort duty. Thus, the trial court did not err in granting summary judgment on this claim.

Because Clearview asserted liability against TRI based solely on TRI being TRL's general partner, the trial court did not err in dismissing all claims against TRI when it properly dismissed all claims against TRL.

The trial court did not err in granting summary judgment against Clearview on its claims against Property Texas, Clarion, Granite, and the Triple Net defendants, and we overrule Clearview's first issue.

### B. Attorney's Fees

### 1. The trial court properly rejected Clearview's affirmative defenses.

After the trial court granted summary judgment for Property Texas, Clearview filed an answer to Property Texas's attorney's fees counterclaims, asserting as "affirmative defenses" breach of contract, fraud, and estoppel based on the failure to disclose the existence of SLA 12. Property Texas moved for summary judgment on these affirmative defenses and set the motion for hearing on October 14, 2005. This motion was set for a hearing several times and moved at appellants' request. Finally, with the hearing set for December 16, 2005, appellants mailed their summary judgment response on December 9, 2005. Four days before the scheduled summary judgment hearing, the court held a pretrial hearing in preparation for the attorney's fee trial. Property One requested that the court consider its summary judgment motion as a pretrial matter. The court refused to consider the motion but ruled that because its order granting summary judgment for Property Texas had already decided the same issues now raised as affirmative defenses, those issues would be excluded from consideration at trial.

■ In its second issue, Clearview argues that the trial court erred in holding that the affirmative defenses were meritless as a matter of law and in essentially ruling on Property Texas's summary judgment motion before the scheduled summary judgment hearing and before receiving its summary judgment response. We disagree. The trial court had already granted summary judgment against Clearview on its fraud and breach of contract claims against Property Texas. Furthermore, although the summary judgment did not explicitly rule on any estoppel theory, because estoppel shares the elements of a knowing false representation with fraud, see *Oldfield v. City of Houston*, 15 S.W.3d 219, 228 (Tex.App.-Houston [14th Dist.]

2000, pet. denied), the summary judgment order was broad enough to cover this later-pleaded affirmative defense. *Cf. Ortiz v. Collins*, 203 S.W.3d 414, 423 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (holding summary judgment broad enough to cover later-pleaded cause of action having common element with claim covered in summary judgment). Clearview does not argue otherwise in its brief and acknowledged at oral argument that the summary judgment covered the breach of contract and fraud affirmative theories and that estoppel had elements in common and was based on the same factual basis as the other theories in the summary judgment. Clearview has not shown that the trial court's ruling would have been different if it had waited to rule until after receiving appellants' response. We hold the trial court did not err in refusing to consider at the attorney's fees trial affirmative defenses that it had already dismissed on summary judgment. Clearview's second issue is overruled.

**2. Attorney's fees against Starcher and Walker were appropriate.**

Property Texas brought a counterclaim for attorney's fees against Clearview L.P. and Clearview Ltd. Property Texas determined during Starcher's deposition that during the relevant time frame, Clearview L.P. had not filed a certificate of limited partnership with the state. Instead, Starcher, as trustee of the Crown Hill Trust, was a fifty/fifty partner with Craig Walker in Clearview L.P. Three days later, Property Texas filed an amended counterclaim, naming "Michael Starcher, Trustee for the [Crown Hill] Trust and Craig Walker d/b/a Clearview Properties L.P." as a counter-defendant, along with Clearview Ltd. Thus, Clearview L.P. was no longer named as an independent counter-defendant but only as the d/b/a for Starcher and Walker. Clearview L.P. filed an

answer naming itself in the caption of the pleading and describing itself as a counter-defendant. No portion of this pleading or any other pre-pleading document asserted any defect in the parties or was verified. *See* TEX.R. CIV. P. 93 (challenges to capacity or allegations of defect of parties must be verified). When the trial court awarded attorney's fees to Property Texas, it ordered that Property Texas could recover jointly and severally from Starcher and Walker d/b/a Clearview L.P. and Clearview Ltd.

■ In its third issue, Clearview argues that the trial court erred in rendering judgment against Starcher and Walker for attorney's fees because they were neither served nor appeared. *See* TEX.R. CIV. P. 124 ("In no case shall judgment be rendered against any defendant unless upon service, ... or upon an appearance by the defendant ... except where otherwise expressly provided by law or these rules."). We conclude Starcher and Walker did not need to be served. This case involves a misnomer situation—where the correct party is sued but under the wrong legal name. *See Chilkewitz v. Hyson,* 22 S.W.3d 825, 828 (Tex.1999); *Riston v. Doe,* 161 S.W.3d 525, 528 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). Property Texas sued the correct party, Clearview L.P., but under the wrong legal name, because the certificate of limited partnership had not been filed. In its amended counterclaim filed after learning this information in Starcher's deposition, Property Texas changed the party designation from Clearview L.P. to Starcher and Walker d/b/a Clearview L.P. A second service of citation after discovery of a mistake is not required in misnomer cases. *Wilkins v.*

*Methodist Health Care Sys.,* 108 S.W.3d 565, 570 (Tex.App.-Houston [14th Dist.] 2003), *rev'd on other grounds,* 160 S.W.3d 559 (Tex.2005). Thus, the judgment is not invalid based on lack of service.

■ Alternatively, we conclude that Clearview L.P. appeared on behalf of Starcher and Walker. When Clearview L.P., who was no longer being independently sued but named only as the d/b/a of Starcher and Walker, then answered in its own name, without alleging any defect in the parties, it answered on behalf of Starcher and Walker. Indeed, it could not have been answering on its own behalf because it was no longer being independently sued. Because the answer was not verified and did not raise any defense regarding capacity or other party defect, any such argument that it was not answering for Starcher and Walker has been waived. *See* TEX.R. CIV. P. 93; *Dolenz v. Vail,* 143 S.W.3d 515, 517–18 (Tex.App.-Dallas 2004, pet. denied).[3] An answer constitutes a general appearance, *see Baker v. Monsanto Co.,* 111 S.W.3d 158, 160–61 (Tex.2003), and thus the judgment in not invalid based on lack of appearance.

■ Finally, Clearview asserts in its brief that even if Starcher and Walker had appeared and been served, "there is not legally or factually sufficient evidence that they have any responsibility for the attorneys' fees awarded." This sentence is the full extent of the argument on this issue. Without analysis, argument, or citation to evidence or authority, this argument is waived. *See* TEX.R.APP. P. 38.1(h); *San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

3. A party defect argument was made in the trial court for the first time after judgment was rendered, but this pleading also contained no verification and thus was inade-
quate to properly raise the issue. *See* TEX.R. CIV. P. 93; *Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex.1988).

We overrule Clearview's third issue.

### 3. TRL's attorney's fees were appropriate

TRL was not named as a party to the suit until over a year into the litigation. Prior to that, Clearview sued Triple Net and a related entity not relevant to this appeal for tortious interference with existing contract, breach of contract (though none of the defendants were party to the contract), and conspiracy to tortiously breach the contract. When Clearview brought TRL into the suit, it sued TRL for breach of contract (and dropped the contract claims against the others) and conspiracy, added a claim for tortious interference with prospective contract against Triple Net, and asserted liability against TRI as a general partner. TRL filed its answer on July 6, 2005, after discovery was virtually complete and approximately one month before the trial court granted summary judgment in favor of the Triple Net defendants.

TRL counterclaimed for attorney's fees based on a provision in its contract because it was a prevailing party in the breach of contract action. At the attorney's fees trial, TRL's counsel, who also represented the other Triple Net defendants, presented evidence of $212,780.50 in reasonable and necessary attorney's fees for representing all of the Triple Net defendants since the inception of the litigation. The trial court awarded $211,599.33, or 99.4% of what was requested, based on the trial court's finding that all of Clearview's claims against the Triple Net defendants "arise out of the same transaction and are so interrelated and inextricably intertwined that the defense entails denial of the same facts" and therefore TRL's attorney's fees cannot be segregated.

In its fourth issue, Clearview challenges the legal and factual sufficiency of the evidence to support the trial court's attorney's fees award to TRL, arguing that TRL was not entitled to essentially the full amount of fees incurred since the litigation began. Clearview asserts that TRL was required to segregate its fees incurred (1) against the other Triple Net defendants (who have no basis for recovering attorney's fees) and (2) in litigating claims other than breach of contract, which is the only claim for which fees are recoverable.[4]

 The trial court's decision as to whether segregation is required is a question of law we review de novo. *See CA Partners v. Spears,* 274 S.W.3d 51, 80 (Tex.App.-Houston [14th Dist.], 2008, no pet.). When a lawsuit involves multiple claims or parties, the proponent of attorney's fees must segregate recoverable fees from those incurred by parties or on claims for which fees are not recoverable. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313 (Tex.2006); *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10–11 (Tex.1991); *Willis v. Donnelly,* 118 S.W.3d 10, 45–46 (Tex.App.-Houston [14th Dist.] 2003), *rev'd in part on other grounds,* 199 S.W.3d 262 (Tex.2006). Attorney's fees that relate solely to a claim for which fees are unrecoverable must be segregated. *Chapa,* 212 S.W.3d at 313; *CA Partners,* 274 S.W.3d at 81. However, "when discrete legal services advance both a recoverable and unrecoverable claim[,] ... they are so intertwined that they need not be segregated." *Chapa,* 212 S.W.3d at 313–14; *accord Broesche,* 218 S.W.3d at

---

4. TRL argues that Clearview waived its segregation argument on appeal by failing to make it in the trial court. However, in a bench trial, failure to segregate can be preserved by a post-judgment motion, as was done here.

*See Amerada Hess Corp. v. Wood Group Prod. Tech.,* 30 S.W.3d 5, 13 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Baber v. Pioneer Concrete of Tex., Inc.,* 919 S.W.2d 664, 668 (Tex.App.-Fort Worth 1995, writ dism'd).

277. In making this determination, we do not look at the legal work as a whole but parse the work into component tasks, such as examining a pleading paragraph by paragraph to determine which ones relate to recoverable claims. *See Chapa,* 212 S.W.3d at 313; *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys.,* 245 S.W.3d 488, 509 (Tex.App.-Houston [14th Dist.] 2007, pets. denied). The party seeking to recover attorney's fees bears the burden of demonstrating segregation is not required. *CA Partners,* 274 S.W.3d at 81.

██ We agree with Clearview that the trial court erred in determining that TRL was not required to segregate any of its fees. TRL stresses, and the trial court found, that all of Clearview's claims against the Triple Net defendants arise from the same factual base—the communication that led to Property Texas's discovery of Clearview's flip deal with TRL. However, as the supreme court made explicit in *Chapa,* "[i]ntertwined facts do not make tort fees recoverable." *Chapa,* 212 S.W.3d at 313; *accord CA Partners,* 274 S.W.3d at 83. In examining the discrete pieces of legal work conducted in this litigation, it is apparent that the trial court awarded attorney's fees for work attributable solely to unrecoverable claims. For example, TRL recovered fees for time spent responding to a request for production that was never served on TRL, even though TRL was already a party to the suit at that time. Furthermore, Clearview never asserted tortious interference claims against TRL, but TRL recovered fees based on drafting summary judgment pleadings (and presumably accompanying legal research) regarding tortious interference claims. "[T]here is no question those fees were not recoverable." *Chapa,* 212 S.W.3d at 313; *see also CA Partners,* 274 S.W.3d at 83 (concluding that attorney's fees for drafting pleadings, performing legal research, and conducting discovery for unrecoverable claims must be segregated); *7979 Airport Garage,* 245 S.W.3d at 509 (finding that fees for drafting petition paragraph and jury charge relating to unrecoverable claims must be segregated).

TRL further attempts to justify its failure to segregate by arguing that Clearview did not clearly distinguish its claims among the Triple Net defendants, thereby forcing TRL to defend various claims, and that breach of contract was in the suit before TRL was sued because Clearview sued Triple Net for breach of contract. But just because the claims overlapped among the Triple Net defendants does not mean that their legal defenses were identical—TRL's breach of contract defense was different than Triple Net's, which was based on its status as a non-signatory. Thus, the specific work performed to advance these legal defenses that did not also advance TRL's defenses is not recoverable.

Finally, Clearview asserts that TRL should not be allowed to recover any fees incurred prior to the date it was served in the lawsuit because it could not incur recoverable fees before it was a party. However, because discovery was nearly finished before TRL was served and TRL used that discovery in obtaining summary judgment, some of the work already completed clearly saved TRL's counsel from needing to perform that work on TRL's behalf. If TRL can prove that discrete pieces of legal work directly advanced its defense of a recoverable claim, then, under *Chapa*'s rationale, TRL can recover fees for such work, even though it did "double service" of defending against another claim or for another party. *See Chapa,* 212 S.W.3d at 313.

We conclude that Clearview did not meet its burden of showing fees were not segregable either by party or claim. How-

ever, because the total amount of fees expended is some evidence of the proper amount of fees to award, failure to segregate requires remand to enable TRL to properly prove attorney's fees. *See Chapa,* 212 S.W.3d at 314; *CA Partners,* 274 S.W.3d at 83. Thus, we sustain Clearview's fourth issue.

### III. CONCLUSION

The trial court did not err in granting summary judgment against Clearview on all its claims against Property Texas, Granite, Clarion, TRL, TRI, and Triple Net. The trial court also did not err in granting attorney's fees for Property Texas. However, we conclude the trial court did err in failing to require TRL to segregate its attorney's fees. Therefore, we reverse the trial court's attorney's fees award in favor of TRL and remand for further proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment.

### SUPPLEMENTAL OPINION ON REHEARING

Clearview moved for rehearing regarding our disposition of its third issue, which complained about the trial court's award of attorney's fees to Property Texas against Starcher and Walker d/b/a Clearview L.P. We overrule Clearview's motion and issue this supplemental opinion on rehearing to respond to some of its arguments.

Clearview argues extensively that Property Texas's basis for filing its amended attorney's fees counterclaim, in which it changed the name of the counter-defendant from Clearview L.P. to Starcher and Walker d/b/a Clearview L.P., was factually incorrect and that we erred in stating that its limited partnership certificate had not been filed with the Secretary of State. Because this conclusion was the basis of our waiver and misnomer analysis, Clear-

view claims our holding was also incorrect. Though Property Texas disagrees, Clearview could possibly be correct that its certificate of limited partnership was on file during all relevant times. However, as we explained before, Clearview never filed a verified denial under Rule 93 raising this issue, so it is waived. *See* TEX.R. CIV. P. 93; *Dolenz v. Vail,* 143 S.W.3d 515, 517–18 (Tex.App.-Dallas 2004, pet. denied).

Clearview argues that verification was not required because the truth of its corporate status appears in the record, based on documents from the Secretary of State and an alleged admission in an affidavit. These arguments fail. The Secretary of State records were not in the record when the answer to the amended counterclaim was due; Clearview did not present them to the trial court until after judgment was rendered. Thus, the records could not have been the basis for failing to file a verified answer. Further, the affidavit at issue, which was filed by Property Texas's attorney during the summary judgment proceedings, stated merely that an agent signed the underlying contract for Clearview L.P. without addressing Clearview's legal status.

Clearview further insists that it did not waive its corporate status argument because it was actually Property Texas's burden to challenge the capacity in which Clearview sued Property Texas. Clearview cites no authority for this proposition, and we are not persuaded that it is correct. Property Texas did not seek to avoid liability to Clearview based on a corporate capacity argument, but Property Texas did seek to ensure that it recovered its attorney's fees from the proper entity. We see no reason that this action negated Clearview's duty to file a verified denial to Property Texas's amended counterclaim, which was amended specifically to change the name of the counter-defendant, if

**146**

Clearview contested the capacity in which Property Texas was seeking to recover attorney's fees. *See* Tex.R. Civ. P. 93; *Dolenz,* 143 S.W.3d at 517–18.

Finally, Clearview argues that the trial court's judgment was inherently contradictory because it granted relief against both Clearview L.P. and Starcher and Walker d/b/a Clearview L.P. The trial court did not order that Property Texas could recover attorney's fees against Clearview L.P. Therefore, as to attorney's fees, which is the only issue in the counterclaim, the trial court's judgment is not contradictory.

For these additional reasons, the trial court did not err in awarding Property Texas attorney's fees against Starcher and Walker d/b/a Clearview L.P.