Affirmed; Memorandum Opinion issued
July 29, 2010, Withdrawn and Substitute Memorandum Opinion filed November 18,
2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-01134-CV



Charles So. T.
Chea and Diana Chea, Appellants 

v.

Paul Poon,
Jason Poon, Raymond Poon, and Marine Foods Express, Ltd., Appellees 



On Appeal from
the 152nd District Court

Harris County, Texas

Trial Court
Cause No. 2006-47622



 

SUBSTITUTE MEMORANDUM OPINION[1]

Appellants/plaintiffs, former owners of a wholesale importation
and distribution business appeal the trial court’s summary judgment in favor of
the appellees/defendants, one of whom purchased most of the assets of one of the
appellants’ companies at a foreclosure sale.  The record reflects that, in
response to the appellees’ no-evidence summary-judgment grounds, the appellants
failed to raise a genuine issue of material fact to preclude summary judgment
as to their claims.  Accordingly, we affirm the trial court’s judgment.

I. Factual
and Procedural Background

            Appellants/plaintiffs
Charles So. T. Chea and Diana Chea, as owners of several different business
entities, were engaged in the wholesale seafood importation and distribution
business in Houston for many years.  One of the Cheas’ companies, American
General Food Corporation (“American General”) had a $2 million line of credit (“Line
of Credit”) from Texas First National Bank (“Bank”) secured by a security
interest in most of American General’s assets, including inventory, equipment,
and accounts receivable.  By the summer of 2002, the Cheas’ businesses were in
financial distress, and they were in default on the Line of Credit.  On August
3, 2002, the Cheas entered into a contract (the “Contract”) with Paul Poon that
contained the following salient terms:

1.      The
parties will form a holding company probably in the form of a Limited Liability
Partnership.  There will be two partners.  The first partner will be a
corporation or a Limited Liability Company owned thirty percent (30%) by [the
Cheas] and seventy percent (70%) by [Poon].  The entity will be named J.R.P.
ENTERPRISES, L.L.P. and will be the real estate side of the business.

The second partner will be a
corporation or a Limited Liability Company owned thirty percent (30%) by [the
Cheas] and seventy percent (70%) by [Poon].  The entity will be named MARINE
FOODS EXPRESS, L.L.P., which will be the part of the business that distributes
and markets various wholesale food products to the restaurant and food markets.

2.      MARINE
FOODS EXPRESS, L.L.P. will assume the note with TEXAS FIRST NATIONAL BANK which
involves American General Food Corporation, Cheas, Inc. d/b/a Captain Charlie
Seafood, [and] Great Ocean, Inc.  It will assume liability on the Two Million
Dollars ($2,000,000.00) line of credit to TEXAS FIRST NATIONAL BANK and will
include all accounts receivable, inventories, and all other fixed assets
(equipment, furniture, fixtures, etc.).

3.      Accounts
receivable and inventory will be verified by independent appraisers with a
minimum of 1.5 million dollars in value.  If the value does not reach 1.5
million dollars then it will be worked out between [the Cheas] and [Poon].

4.      POON
shall inject Five Hundred Thousand and No/100 Dollars ($500,000.00) in cash at
the time of closing.  If necessary POON will inject another Four Hundred Thousand
and No/100 Dollars ($400,000.00) by loan to MARINE FOODS EXPRESS, L.L.P. for
additional capital.

. . .

6.      MARINE
FOODS EXPRESS will pay DIANA CHEA Seventy Thousand and No/100 Dollars
($70,000.00) annual salary and ten percent (10%) of the net annual income as a
bonus.  Fifty Thousand and No/100 Dollars ($50,000.00) will be advanced to DIANA
CHEA paid monthly as prepaid annual bonus for the first year.  In any case [sic]
the net income results in a bonus of more than Fifty Thousand and No/100
Dollars ($50,000.00) the company will pay the difference.  In any case [sic] the
net annual income results in a bonus of less than Fifty Thousand and No/100
Dollars ($50,000.00) the amount over paid will be deducted from the next year’s
bonus.  [The Cheas] will be directors of MARINE FOODS EXPRESS.

. . .

8.      TEXAS
FIRST NATIONAL BANK must approve in writing all transactions that have any
affect [sic] on existing notes and/or collateral, assumption of debts, assets,
and any other issue involving TEXAS FIRST NATIONAL BANK.

. . .

11.  MARINE FOODS EXPRESS, L.L.P.
agrees to pay [the Cheas] Two Hundred Thousand and No/100 Dollars
($200,000.00), in cash, at the closing.

Neither of the two proposed entities—J.R.P.
Enterprises L.L.P. and Marine Foods Express, L.L.P. (“Marine Foods LLP”)—was
ever formed.  However, on August 2, 2002, Paul Poon’s sons, Jason and Raymond,
formed Marine Foods Express, Ltd. (“Marine Foods Ltd.”), whose name is very
similar to Marine Foods LLP’s name.  Because it was never formed, Marine Foods LLP
could not assume or attempt to assume liability on the Line of Credit.  No
closing under the Contract ever occurred.  On September 26, 2002, the Bank
foreclosed upon its security interest and sold American General’s assets to Marine
Foods Ltd. for $2 million.  On November 25, 2002, the Cheas’ companies,
including American General, filed for protection under Chapter 7 of the United
States Bankruptcy Code.

Diana Chea was employed as the general manager of
Marine Foods Ltd. at some point subsequent to its formation, but Marine Foods
Ltd. terminated her employment in June 2006.  On August 2, 2006, the eve of the
fourth anniversary of the execution of the Contract, the Cheas filed suit
against appellees/defendants Paul Poon, Jason Poon, Raymond Poon, and Marine Foods
Ltd. (collectively the “Poon Parties”).  The Cheas alleged the following in
support of their claims for fraud, conspiracy, breach of contract and breach of
an employment contract: 

·       
The
Cheas entered into the Contract to form a new business entity to acquire and
continue the seafood importation and distribution business that had been
conducted by the Cheas.  Paul Poon promised to form a new business entity with
the Cheas to conduct a wholesale food product importation and distribution
business, 30% of which would be owned by the Cheas and 70% of which would be
owned by Paul Poon.  This entity was to be known as “Marine Foods Express
L.L.P.”  

 

·       
Paul
Poon also promised that the Cheas would be paid $200,000 in cash at closing and
that Marine Foods LLP, the new business entity, would employ Diana Chea as its
general manager at an annual salary of $70,000, plus 10% of the net annual
income as a bonus.  In reliance upon these promises, the Cheas agreed to enter
into the new business arrangement and effectively to sell Paul Poon their
existing wholesale food products business.

 

·       
Paul Poon did not honor his promises, either to form the new
business entity with the Cheas as 30% owners or to pay the Cheas $200,000 at
closing.  Instead, without the Cheas’ knowledge, Paul conspired with Jason and
Raymond to form another company to operate the Cheas’ wholesale food interest,
Marine Foods Ltd.  The Cheas were deprived of any ownership interest in this
company. 

·       
The Poon Parties continuously have refused to (1) convey to the
Cheas a 30% ownership interest in Marine Foods Ltd., (2) pay the Cheas 30% of
the profits from Marine Foods Ltd.’s business, and (3) pay Diana Chea the
agreed-upon bonus of “10% of the company net annual income.”  The Poon Parties
also caused Diana Chea’s employment as general manager of Marine Foods Ltd. to
be terminated without just cause, causing Diana Chea to lose her guaranteed
salary and share of the net profits.

·       
Paul Poon engaged in fraud by making numerous promises to the
Cheas with no present intention to perform.  These promises induced the Cheas
to enter into the Contract.

·       
The Poon Parties conspired with one another to defraud the Cheas
of their ownership in the “Marine Foods Express business.”

·       
Paul Poon breached the Contract because “Marine Foods Express”
failed to pay the Cheas $200,000 at closing as promised in the Contract.

·       
The Poon Parties promised to employ Diana Chea as general manager
of the Marine Foods operation.  The Poon Parties breached their promises by terminating
Diana Chea’s employment without just cause in June 2006, which caused Diana Chea
damages.

·       
Based on these allegations, the Cheas sought the imposition of a
constructive trust, an accounting, actual damages, exemplary damages,
attorney’s fees, and prejudgment and postjudgment interest.

The Poon Parties answered the Cheas’ lawsuit with verified
denials, asserting that (a) no enforceable agreement arose because the Cheas
failed to furnish the $1.5 million in accounts receivable and inventory referenced
in the Contract and (b) Diana Chea’s employment with Marine Foods Ltd. was
terminated because, among other things, she abused her position and
misappropriated confidential information for the benefit of her son’s company,
All Harvest Trading, LLC (“All Harvest”).  The Poon Parties also counter-sued the
Cheas, joining All Harvest as a third-party defendant.  The Poon Parties asserted
claims against the Cheas and All Harvest for misappropriation of trade secrets,
breach of fiduciary duty, tortious interference with business relations,
conspiracy, and defamation.  They also sought injunctive relief.  

The Poon Parties filed an amended summary-judgment
motion, seeking a traditional summary judgment as well as a no-evidence summary
judgment.  The Poon Parties asserted that there is no evidence of the
following:  (1) all essential elements of the fraud claim, (2) all essential
elements of the conspiracy claim, (3) all essential elements of the breach-of-contract
claim except for the existence-of-a-contract element, and (4) all essential
elements of the breach-of-employment-contract claim.  The Cheas filed a
response, with affidavits attached from both Charles and Diana Chea.  

The trial court granted the Poon Parties’ summary-judgment
motion on June 10, 2008.  This judgment was not final because it did not
dispose of the Poon Parties’ pending counterclaims and third-party claims.  However,
on June 30, 2008, the Poon Parties nonsuited these claims, and on July 21,
2008, the trial court signed an order of nonsuit.  When they nonsuited their
claims, the Poon Parties also moved for entry of final judgment, attaching a
proposed judgment.  On July 25, 2008, the trial court signed the proposed final
judgment submitted by the Poon Parties.  The Cheas filed a motion for new trial
within thirty days of the July 25, 2008 judgment but not within thirty days of
the July 21, 2008 order.  In response, the Poon Parties asserted that the trial
court lacked plenary power because the trial court had rendered a final
judgment on July 21, 2008, and its plenary power had expired before the motion
for new trial was filed.  In reply, the Cheas asserted that any prior final
judgment had been modified by the July 25, 2008 final judgment and, in the
alternative, the Cheas filed a motion under Texas Rule of Civil Procedure 306a as
to the July 21, 2008 order.  The trial court did not expressly rule on any
post-judgment motions.  

II. 
Issues and Analysis

            In two
issues, the Cheas assert first that their post-judgment motions were timely
filed and second that the trial court erred in granting summary judgment in
favor of the Poon Parties.

A.        Does
this court have jurisdiction over this appeal?

            In their first
issue, the Cheas assert that their motion for new trial and notice of appeal
were filed timely and therefore this court has appellate jurisdiction.  In
response, the Poon Parties contend that the trial court’s summary judgment
became final on July 21, 2008, when the court signed its nonsuit order.  Thus, they
argue that the Cheas’ motion for new trial, filed more than thirty days later
on August 25, 2008, was a legal nullity.  According to the Poon Parties,
because the Cheas’ motion for new trial was a legal nullity, there was no
extension of the time to file a notice of appeal, and the Cheas’ notice of
appeal, filed on October 23, 2008, was likewise late.  Thus, the Poon Parties assert
that this court lacks jurisdiction over this appeal.  We disagree.  

When the trial court signed
the nonsuit order on July 21, 2008, there was a final judgment because the
trial court had actually disposed of all claims and parties before the court.  See
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 192, 200 (Tex.
2001).  However, “if a judgment is modified, corrected or reformed in any
respect, the time for appeal shall run from the time the modified, corrected,
or reformed judgment is signed.”  Tex.
R. Civ. P. 329b(h).  

The trial court rendered a judgment on July 25, 2008,
in which it stated that it had granted summary judgment as to the Cheas’ claims
and that the Poon Parties had nonsuited their claims.  The trial court then
rendered judgment on July 25, 2008, that all the relief requested by the
parties was denied, and the court stated that the judgment was final and
disposed of all claims and parties.  The trial court issued this judgment while
it still had plenary power over the case, and there is no indication that the
trial court issued this judgment solely for the purpose of extending the
appellate timetable.  Under these circumstances, the prior final judgment was
modified by the July 25, 2008 judgment, and the appellate timetables then began
to run from the July 25, 2008 judgment.  See Tex. R. Civ. P. 329b(h); Mackie v. Mackie, 890 S.W.2d
807, 808 (Tex. 1994) (per curiam).  Because the Cheas filed their motion for
new trial within thirty days of this modified final judgment, their motion was filed
timely.  See Tex. R. Civ. P.
329b(a),(h).  Likewise, the Cheas timely filed their notice of appeal within
ninety days after the trial court’s modified judgment.  See Tex. R. App. P. 26.1(a) (stating that,
when a motion for new trial has been timely filed, a party must file its notice
of appeal within ninety days of the judgment).  We thus have jurisdiction over
this appeal.[2] 


B.        Did the trial court properly grant summary
judgment?

            The Cheas assert
that the trial court erred in granting summary judgment in favor of the Poon
Parties because they did not conclusively prove any affirmative defense or
negate any challenged elements in their motion for summary judgment. 
Additionally, the Cheas contend that more than a scintilla of evidence exists
as to the Cheas’ fraud, breach-of-contract, conspiracy, and breach-of-employment-contract
claims; thus, the Cheas argue that summary judgment was also improper on the
no-evidence grounds.  We first review the no-evidence grounds.

1.         Standard
of Review

In reviewing a no-evidence summary judgment, we
ascertain whether the nonmovant pointed out summary-judgment evidence raising a
genuine issue of fact as to the essential elements attacked in the no-evidence
motion.  Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 206–08
(Tex. 2002).  In our de novo review of a trial court’s summary judgment, we
consider all the evidence in the light most favorable to the nonmovant,
crediting evidence favorable to the nonmovant if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not.  Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence
raises a genuine issue of fact if reasonable and fair-minded jurors could
differ in their conclusions in light of all of the summary-judgment evidence.  Goodyear
Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per
curiam).  When, as in this case, the order granting summary judgment does not
specify the grounds upon which the trial court relied, we must affirm the
summary judgment if any of the independent summary-judgment grounds is
meritorious.  FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872 (Tex. 2000).

2.         No Evidence
of Causation as to the Fraud Claim

To prevail on their fraud claim, the Cheas must prove,
among other things, damages resulting from their alleged reliance upon a misrepresentation
by one or more of the Poon Parties.  See Baylor Univ. v. Sonnichsen, 221
S.W.3d 632, 636 (Tex. 2007) (stating that damages for common-law fraud are
either direct damages, which compensate for the loss that is the necessary and
usual result of the defendant’s wrongful act, or consequential damages, which
result naturally from the defendant’s wrongful act).  The only alleged
misrepresentations asserted by the Cheas were the promises made by Paul Poon in
the Contract.  The Poon Parties asserted in their summary-judgment motion that there
is no evidence of fraud damages and no evidence that the Poon Parties caused
damage to the Cheas.

The Cheas assert that at the time Paul Poon signed
the Contract, he had no intention of performing these promises.  In the
Contract, the parties agreed that they would (1) form new companies, including
Marine Foods LLP, (2) have Marine Foods LLP assume American General’s obligations
under the note and the Line of Credit with the Bank, and (3) take various
actions at the closing of this transaction.  However, no closing and no
assumption of liability under the Line of Credit could occur without the Bank’s
written approval.  The parties stated this requirement of Bank approval in the
Contract.  Therefore, even if Paul Poon and the Cheas had fully performed their
promises and obligations under the Contract, there would be no assumption and
no closing absent written approval by the Bank.  

However, on appeal, the Cheas do not argue that the
Bank would have given written approval for such an assumption, and the
summary-judgment evidence does not raise a genuine fact issue in this regard.  In
his two affidavits, Charles Chea testified in pertinent part as follows: 

Mr. Poon expressly agreed to have the new company assume
the liability for the Texas First National Bank debt, which would have
prevented Texas First National Bank from foreclosing on its lien, and would
have preserved the assets of Marine Foods[’] business for the new entity that
Mr. Poon promised to form with us.  In short, if Mr. Poon had complied with his
obligations, there would have been no foreclosure sale of the assets at all.

. . . 

[W]here Mr. Poon promised to have the Texas First National
Bank debt assumed by the new company that was to be formed pursuant to the
[Contract], and then failed to perform that promise, but instead knowingly
allowed his sons’ partnership to assume the debt instead, the foreclosure sale
occurred only because of the Poons’ repudiation of their obligations.

In his testimony, Charles Chea does not provide any evidence
that the Bank would have approved an assumption of liability under the Line of
Credit by Marine Foods LLP.  Rather, he states in a conclusory fashion that, if
Paul Poon had performed his obligations under the Contract, there would have
been no foreclosure sale of the assets of American General.  These conclusory statements
do not raise a genuine fact issue as to whether the Bank would have approved
the transaction.  See Coastal Transport Co., Inc. v. Crown Cent. Petroleum
Corp., 136 S.W.3d 227, 232 (Tex. 2004) (stating that even
unobjected-to conclusory testimony
does not raise a fact issue); Dolcefino v. Randolph, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000,
pet. denied) (explaining that conclusory allegations in affidavits are
insufficient to raise a fact issue).

            In their affidavits, both of the Cheas
testify that they have been damaged by the Poon Parties’ failure to pay the
$200,000 that, in the Contract, Marine Foods LLP promised to pay the Cheas at
closing.  However, no closing could occur without the Bank’s approval, and
there is no evidence that the Bank would have approved.[3]  

            As to the Cheas’ fraudulent
inducement claim, presuming that there were false representations upon which
the Cheas justifiably relied in entering into the Contract, the Cheas still
would have to raise a fact issue as to whether their entering into the Contract
caused the Cheas’ alleged damages.  In their appellate brief, the Cheas state
that, “Had Appellees not defrauded the Cheas, the Cheas could have looked for
and possibly found another business partner to work with them and save
their business.” (emphasis added).  However, there is no summary-judgment
evidence that raises a fact issue in this regard.

            Under the applicable standard of
review, even presuming that there was reliance by the Cheas upon alleged misrepresentations
by one or more of the Poon Parties, the evidence does not raise a genuine fact issue
as to whether any of the Cheas’ alleged damages resulted from this reliance.  See
LMB, Ltd. v. Moreno, 201 S.W.3d 686, 688–89 (Tex. 2006) (per curiam);
American Steel & Supply, Inc. v. Commercial Metals, Inc., No.
13-08-00502-CV, 2010 WL 877661, at *6 (Tex. App.—Corpus Christi Mar. 11, 2010,  pet.
denied) (mem. op.).  Thus, the summary-judgment record contains no evidence of
one of the essential elements of the Cheas’ fraud claim, and the trial court
did not err in granting summary judgment as to the fraud claim.

3.         No
Evidence of Conspiracy

                The
Cheas’ civil conspiracy claim requires an underlying tort claim.  See Ernst
& Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 583 (Tex.
2001).  The only underlying tort they have alleged is fraud.  Because summary
judgment was proper as to the fraud claim, it was also proper as to the Cheas’ civil
conspiracy claim.  See id.  Therefore,
the trial court did not err in granting summary judgment as to this claim.

4.         No Evidence
that Alleged Breach of Contract Caused Damages

To recover damages for breach of contract, the Cheas would
have to prove damages resulting from the alleged breaches of contract. See Clearview
Prop., L.P. v. Prop. Tex. SC One Corp., 287 S.W.3d 132, 139–40 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  The
Poon Parties asserted, among other things, that the Cheas had no evidence that
the Cheas’ damages, if any, resulted from the Poon Parties’ alleged breaches of
the Contract.  For the same reasons as discussed above in section II.B.2 of
this opinion, we conclude that the evidence does not raise a genuine fact issue
as to whether the Cheas’ alleged contract damages resulted from the Poon
Parties’ alleged breaches of contract.  See id.  Because there is no evidence of an essential
element of the Cheas’ breach-of-contract claim, the trial court did not err in
granting summary judgment as to this claim.  

5.         No Evidence
of Breach of Employment Contract

In Texas, absent a specific contract term to the
contrary, employment contracts are terminable at will by either party.  See
Cruikshank v. Consumer Direct Mortgage, Inc., 138 S.W.3d 497, 501 (Tex.
App.—Houston [14th Dist.] 2004, pet. denied).  Thus, to succeed on her
breach-of-employment-contract claim, Diana Chea would have to prove, among
other things, that she and her employer had a contract that specifically
provided that the employer did not have the right to terminate her employment
at will.  See id.  

In their motion for summary judgment, the Poon
Parties asserted that the Cheas had no evidence of an employment contract
between Diana Chea and any of the Poon Parties specifically providing that the employer
did not have the right to terminate Diana Chea’s employment at will.  There is
no summary-judgment evidence that Paul Poon, Jason Poon or Raymond Poon ever employed
Diana Chea.  There is summary-judgment evidence that Marine Foods Ltd. employed
Diana Chea.  However, the Contract is not an employment agreement between
Marine Foods Ltd. and Diana Chea, and there is no summary-judgment evidence raising
a fact issue as to the existence of a contract specifically providing that
Marine Foods Ltd. did not have the right to terminate Diana Chea’s employment
at will.  The Cheas instead rely upon provisions of the Contract between Paul Poon
and the Cheas, excerpted above, regarding Marine Food LLP’s anticipated employment
of Diana Chea.  These provisions are not binding on Marine Foods Ltd., which
was not a party to the Contract.

In any event, even if the Contract had required Marine
Foods Ltd. to employ Diana Chea under the terms stated in the Contract, there
is no provision anywhere in the Contract that Diana Chea’s employer did not
have the right to terminate her employment at will.  Diana Chea failed to raise
a genuine fact issue as to an essential element of her breach-of-employment-contract
claim, and the trial court did not err in granting summary judgment as to this
claim.  See id.  

III.  Conclusion

Because the trial court’s July 25, 2008 judgment
modified its prior final judgment, this court has jurisdiction over this
appeal.  The Cheas cannot prevail on appeal because they failed to raise a
genuine fact issue as to an essential element of each of their claims.  Thus, the
trial court did not err in granting summary judgment based on the no-evidence
grounds.[4] 
Accordingly, we overrule the Cheas’ second issue and affirm the trial court’s
judgment.

 

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices Frost, Boyce,
and Sullivan.









[1] The court’s
memorandum opinion issued July 29, 2010, is withdrawn, and this substitute
memorandum opinion is issued in its place.





[2] We need not
and do not consider whether the trial court erred in failing to conduct an
evidentiary hearing based on the Cheas’ motion under Texas Rule of Civil
Procedure 306a.  





[3] The Poon
Parties asserted no-evidence grounds as to all of the elements of the fraud
claim.  The Poon Parties were not required to specifically assert that there
was no evidence that the Bank would have approved the transaction.  See
Chrismon v. Brown, 246 S.W.3d 102, 113 n.12 (Tex. App.—Houston [14th Dist.]
2007, no pet.).





[4] We need not
and do not address the traditional summary-judgment grounds.