Tracy Christopher, Justice *902 The president and attorney-in-fact of a corporation, acting individually and on the corporation's behalf, induced others to start a new business with him in the form of a limited partnership with his corporation. He then denied the partners and their principals access to financial records and bank accounts, refused to capitalize the new business as promised, unilaterally locked the new business's doors, seized the business's tangible assets, and gave the use of the assets, free of charge, to a new company formed by his wife. The other partners and their principals successfully sued for, among other things, fraudulent inducement, breach of fiduciary duty, conversion, and breach of contract, and were awarded actual damages, punitive damages, and attorneys' fees. On appeal, none of the trial court's liability or actual-damages are challenged; the sole issues are whether the trial court erred in awarding punitive damages and attorneys' fees.
Regarding punitive damages, the corporate president and his company argue that the only actual damages proven and awarded were for breach of contract, which will not support an award of punitive damages. Although the trial court was not asked to identify the actual damages awarded or link them to a specific cause of action, there is legally sufficient evidence that the wronged parties sustained actual damages proximately caused by the tortious conduct alleged.
As for attorneys' fees, these are challenged on the ground that the plaintiffs failed to segregate fees incurred for work performed solely to advance a claim that was unsuccessful or for which attorneys' fees are unavailable from the remainder of the claims for which attorneys' fees sought. Although the parties dispute whether this complaint is properly before us for review, we conclude that the issue was preserved during the bench trial when the failure to segregate was pointed out in closing argument. The issue was not waived on appeal as alleged, because the corporate president and his company specifically challenged the trial court's finding of fact that the fees awarded were for legal services that were "reasonably related to or were intertwined with services rendered in pursuing the causes of action on which relief is granted." We further hold that the prevailing parties were required to segregate recoverable from nonrecoverable fees, and that they failed to do so.
We accordingly reverse the portion of the judgment awarding attorneys' fees, affirm the remainder of the judgment, and remand the cause for a new trial solely on the issue of attorneys' fees.
I. BACKGROUND
In the scrap-metal industry, companies buy scrap metals that can be melted down and reused, then sell the metal either to other scrap-metal companies, whether locally or abroad, or to consumers such as mills that melt the material and use it in new products. Because the sales have a low profit margin, businesses generally must sell material in large quantities to succeed.
*903 Joshua Cooper has worked in the industry since 1993, including seven years during which he ran his own scrap trading company, buying scrap metal from yards, then shipping and selling it overseas, primarily in China. Cooper had worked on trades with Travis Bonner for years, and Bonner eventually joined Derichebourg Recycling, where Cooper was then employed.
One of Derichebourg's customers was Weixiang "Jackson" Zhao, president of Home Comfortable Supplies, Inc., a small scrap-metal company that Zhao has at all times operated from a scrap yard and warehouse owned by his wife Shuhua Li a/k/a Semilla Zhao ("Li"). On behalf of Home Comfortable Supplies, Zhao buys scrap metal locally and ships it to China where it is sold.
Zhao offered Cooper $160,000 a year to work for Home Comfortable Supplies, but Cooper declined, saying that he wanted to start his own yard. Zhao then suggested that the two go into business together. Zhao represented that Home Comfortable Supplies would capitalize the new company for $1.6 million by investing $400,000 a month for four months. Cooper would receive the same $160,000 salary previously offered, plus an ownership interest and chances to both buy and earn a larger share of the company. For his part, Cooper recommended that the new company also hire Travis Bonner as operations manager, José Vallejo as a buyer, Rick Wilson as a demolition expert, and Colt Hendricks as a scale operator. Zhao agreed.
A. The Agreements
The parties formed the limited partnership of Paragon Worldwide, Ltd. in April 2013. Home Comfortable Supplies owned a 97% interest, and Cooper and Bonner each owned a 1% interest through their respective individual companies.[1] The remaining 1% interest was owned by Paragon's general partner PWM, GP, LLC ("the General Partner"). Home Comfortable owned an 80% interest in the General Partner, and Cooper's company purchased the remaining 20% for $5,000.
Starting up the company primarily involved three contracts: the Management Agreement, Paragon's Partnership Agreement, and the General Partner's Company Agreement. The Management Agreement stated that Cooper and Bonner were independent contractors terminable at will. If they were terminated without cause, then they were to be paid an additional two months' compensation. If they were terminated for cause, then Paragon and the General Partner were to buy back Cooper's and Bonner's respective interests in those companies for the amount paid for their interests.
The Partnership Agreement specified that Cooper was to receive $81,650 as compensation for the 2013 calendar year, and that Bonner would be paid a pro rata portion of a $112,400 salary.[2] The General Partner was to have "full, exclusive and complete discretion in the management and control" of Paragon, with authority to, among other things, negotiate and execute all documents and instruments, draw checks, collect amounts due, pay debts, and acquire and dispose of Paragon's assets. The General Partner also was to maintain Paragon's books at Paragon's principal place of business, and all of Paragon's *904 partners were to have all reasonable access to the books during business hours.
Cooper was the General Partner's sole managing member, but the General Partner's company agreement provided that if Home Comfortable Supplies disagreed with Cooper's decisions, then "the will of [Home Comfortable Supplies] shall always govern." Home Comfortable Supplies' will was not absolute, however. The Partnership Agreement prohibited any partner from doing any act or deed with the intent of harming the Partnership's operations or from assigning the rights of the Partnership or of its partners in specific partnership assets without the partners' unanimous consent.
B. The Startup
Paragon leased its warehouse and yard from Zhao's wife Li. Although Li previously had run her own scrap metal company at that site, and Home Comfortable Supplies continued to operate there, Cooper and Bonner found that there was no occupancy certificate for the site, and repairs were necessary before Paragon could obtain one.
Zhao caused Home Comfortable Supplies to invest $330,000 in Paragon and an indeterminate amount of inventory. The Partnership Agreement specified that the $1.6 million that Home Comfortable Supplies agreed to provide could include business inventory and assets, and that the General Partner could determine the fair-market value of such contributed property, but that the value of the capital contribution was to be ratified by all of the partners. Bonner prepared a list of the contributed inventory and gave it to Zhao, but Zhao kept the list and the partners neither determined nor ratified any amount as the inventory's fair market value. Bonner estimated that Home Comfortable Supplies' total capital contribution, including the $330,00 in cash, was less than $700,000.
C. The Operations
Within a few weeks of beginning business, Zhao cut off Cooper's access to the business's checking account and financial records. Zhao complained that Paragon was losing money, but despite Cooper's repeated requests, Cooper received no financial reports. Cooper had to forego profitable deals for the company because he had no access to Paragon's funds. Checks to metals sellers were written by Li, but she only came into the office in the afternoons, leaving suppliers waiting for hours.
Although Paragon sold scrap metal to Home Comfortable Supplies, Home Comfortable Supplies delayed paying for the material, which further harmed the business. For example, when Bonner received a paycheck in October more than three weeks late, the check came with instructions from Zhao not to deposit it yet because there were insufficient funds to cover it. At that time, however, Home Comfortable Supplies owed more than $81,000 for scrap it had purchased from Paragon.
In support of his claim that the company was losing money, Zhao prepared false reports and represented that they were from Paragon's accountant. For example, on November 2, 2013, Zhao sent Cooper an email stating, "Please see attached statement from our CPA. [She] said it is [an] exact match with our Purchase Receipts, Sale Invoices, Bank Statement, and Check Stubs." When the accountant was deposed, she stated that she had not prepared the reports and could not have done so, because although Cooper had given her supporting documents, Zhao did not. The accountant prepared any reports she gave to Zhao using bank statements, payroll information, and cash pay-out lists she received *905 from Li, and the accountant's only information about inventory value and accounts payable came from numbers that Zhao wrote on a piece of paper while in the accountant's office. The accountant denied that the report Zhao referred to was an accurate reflection of Paragon's financials.
D. The Takeover
On Monday, November 4, 2013, Zhao emailed Cooper, Bonner, and all of Paragon's employees, "Paragon Worldwide Ltd. is permanently closed effective November 4, 2013." On the same day, Li formed New Star Recycling, Inc. with its operations at the same location.
The next day, Zhao signed an agreement with himself, in his capacities as president of Home Comfortable Supplies and as manager of Paragon. Under the agreement, Home Comfortable Supplies obtained all of Paragon's tangible assets free of charge. Home Comfortable Supplies agreed to be responsible for all invoices incurred by Paragon before Zhao shut the business down. The agreement does not mention Paragon's accounts receivable, which, according to Bonner, were at least double the amount of Paragon's accounts payable at that time.
On Wednesday, November 6, 2013, Zhao, as Home Comfortable Supplies' president, signed an agreement with his wife Li, in her capacity as New Star's president. Under that agreement, Home Comfortable Supplies continued to operate rent-free at the same facility, and shared the use of all of Paragon's seized tangible assets with New Star.
Before the end of the week, all of Paragon's former personnel had been returned to work at the facility as employees of New Star or Home Comfortable Supplies. The only exceptions were Cooper, Bonner, Wilson, and Hendricks. According to José Vallejo, New Star used the computer program licensed to Paragon, containing Paragon's customer lists; used the same suppliers, vendors, equipment, and inventory; and bought the same materials. As Vallejo stated, "It was the same company, just a different name, different people."
E. The Lawsuit
Cooper, Bonner, and their respective companies sued Zhao, Li, Home Comfortable Supplies, New Star, Paragon, and the General Partner. Cooper's and Bonner's claims included breach of contract, breach of fiduciary duty, tortious interference with existing contracts, civil conspiracy, conversion, promissory estoppel, defalcation, and minority shareholder oppression. Home Comfortable Supplies and the General Partner counterclaimed for declaratory judgment as to the parties' rights and liabilities under their agreements.
After a nonjury trial, the trial court rendered judgment holding Zhao and Home Comfortable Supplies jointly and severally liable for Cooper's company's actual damages of $36,666 and Bonner's company's actual damages of $28,733. The court also held Zhao and Home Comfortable Supplies jointly and severally liable for attorneys' fees of $63,755, and held Zhao individually liable for punitive damages of $50,000 each to Cooper's company and to Bonner's company. Zhao and Home Comfortable Supplies filed a general request for findings of fact and conclusions of law, which the trial court issued; no party requested additional or amended findings.
The trial court denied Zhao and Home Comfortable Supplies' motion to modify the judgment to reduce the attorneys' fees awarded and to eliminate exemplary damages. They challenge the award of these *906 same damages on appeal.[3]
II. STANDARD OF REVIEW
Unchallenged findings of fact bind the appellate court unless the contrary is established as a matter of law or no evidence supports the finding. McGalliard v. Kuhlmann , 722 S.W.2d 694, 696 (Tex. 1986). If the factual findings include at least one element of a given ground of recovery or defense, any omitted unrequested elements that are supported by the evidence are supplied by a presumption in support of the judgment. TEX. R. CIV. P. 299. Although a party can avoid a presumed finding by requesting additional or amended findings that include the omitted element, see TEX. R. CIV. P. 298, no such request was made here.
When reviewing the sufficiency of the evidence to support the trial court's express or implied findings, we apply the same standards of review that apply to a jury's verdict. See MBM Fin. Corp. v. Woodlands Operating Co. , 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing Catalina v. Blasdel , 881 S.W.2d 295, 297 (Tex. 1994) ). To analyze the legal sufficiency of the evidence, we review the record in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. See City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Ford Motor Co. v. Ridgway , 135 S.W.3d 598, 601 (Tex. 2004) (quoting Merrell Dow Pharm., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997) ). The evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. City of Keller , 168 S.W.3d at 810 (quoting Robert W. Calvert, " No Evidence" & "Insufficient Evidence" Points of Error , 38 TEX. L. REV. 361 (1960) ).
III. PUNITIVE DAMAGES
In their first issue, Home Comfortable Supplies and Zhao argue that the trial court erred in awarding punitive damages because such damages are not recoverable for breach of contract. According to Home Comfortable Supplies and Zhao, the only damages proven at trial and awarded in the judgment were for approximately three months' compensation that had been withheld from Cooper and Bonner in breach of the Management Agreement. But as Cooper and Bonner point out-and as Home Comfortable Supplies and Zhao admit in their reply brief-the actual damages awarded exceed the amounts due under the Management and Partnership Agreements. The trial court was not asked to, and did not, identify the damage elements it considered or link a specific amount of damages to a particular cause of action. Because Home Comfortable Supplies and Zhao begin with the mistaken premise that the trial court awarded actual damages only for breach of the Management *907 Agreement, their conclusion that the trial court "erred in awarding punitive damages for breach of an at-will contract" is similarly mistaken.
In the alternative, Home Comfortable Supplies and Zhao argue in their second issue that Cooper and Bonner failed to prove that they suffered any damages, other than damages from the breach of the Partnership Agreement. By focusing exclusively on the admitted failure to pay Cooper and Bonner all they were owed, Zhao and Home Comfortable Supplies overlook the findings that Cooper and Bonner were harmed by Zhao's and Home Comfortable Supplies' tortious conduct. Punitive damages are recoverable, for example, for fraudulent inducement. See TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1) (West 2015). The actual damages for fraudulent inducement may be the same as those available for breach of contract if the tortfeasor induced another to enter the contract by falsely promising to perform an act it had no intention of performing. See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc. , 960 S.W.2d 41, 46-47 (Tex. 1998) (sub. op.); see also id. at 47 ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."). Zhao and Home Comfortable Supplies do not challenge the trial court's findings that they fraudulently induced Cooper and Bonner, through their respective companies, to enter into the agreements in this case. The actual damages caused by the fraudulent inducement may exceed those caused by the mere breach of the contracts. In addition to damages for the compensation they were due, both Cooper and Bonner presented evidence that Zhao's and Home Comfortable Supplies' actions in inducing them to enter the Partnership and Management Agreements with no intention of performing them severely damaged their professional reputations by making it appear that Cooper and Bonner caused Paragon to fail. Cooper testified that he now suffers from debilitating depression for which he is under a doctor's care and unable to work, and Bonner testified that he can no longer work in the industry in Houston, and had to choose between changing his line of work or moving. Both men testified that they have never again earned as much as they were earning at Derichebourg before they were induced to leave their jobs to go into business with Zhao and Home Comfortable Supplies.
Punitive damages also are available for breach of fiduciary duty. See Manges v. Guerra , 673 S.W.2d 180, 184 (Tex. 1984) (op. on reh'g). Partners share "the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise." Bohatch v. Butler & Binion , 977 S.W.2d 543, 545 (Tex. 1998). Zhao and Home Comfortable Supplies do not challenge the trial court's findings that clear and convincing evidence establishes that Zhao, individually and as president of Home Comfortable Supplies, wrongfully took possession and control of Paragon's business assets and transferred them with the intention of destroying Paragon's business, harming Paragon's partners, and enriching himself. Thus, damages may have been awarded for breach of fiduciary duty. These damages may have included the value of Cooper's and Bonner's interest in Paragon's assets, if the assets had been liquidated as required, as well as the money Cooper invested to obtain a larger membership interest in the General Partner.
*908 These examples illustrate that although we do not know how the trial court calculated the damages awarded, we cannot rule out the possibility that they were awarded in large measure for Zhao's and Home Comfortable Supplies' tortious conduct. We accordingly overrule their first two issues.
IV. ATTORNEYS' FEES
If any attorneys' fees relate solely to a claim for which such fees are unrecoverable, the party seeking an award of attorneys' fees must segregate recoverable from unrecoverable fees. See Tony Gullo Motors I, L.P. v. Chapa , 212 S.W.3d 299, 313 (Tex. 2006). In their remaining two issues, Home Comfortable Supplies and Zhao challenge the trial court's award of attorneys' fees on the ground that Cooper and Bonner did not segregate the fees incurred for work performed in pursuing claims against parties against whom they did not prevail, in prosecuting tort claims for which attorneys' fees are not recoverable, or in defending against Home Comfortable Supplies' and Zhao's counterclaims. Cooper and Bonner argue that Zhao and Home Comfortable Supplies failed to preserve this complaint in the trial court, or alternatively, that Zhao and Home Comfortable Supplies waived this complaint on appeal by failing to challenge the trial court's factual finding that the legal services performed to advance claims for which no attorneys' fees are recoverable were intertwined with the services performed to advance claims for which fees are recoverable. We conclude that the complaint is properly before us and that Cooper and Bonner were required to segregate recoverable from unrecoverable fees.
A. Preservation in the Trial Court
With rare exceptions, a reviewing court can consider an appellate complaint only if it has been preserved by the trial court's explicit or implicit adverse ruling (or by the complaining party's exception to the trial court's refusal to rule) on a timely and sufficiently specific request, objection, or motion. See TEX. R. CIV. P. 33.1(a). It is well-established that in a case tried to a jury, an objection to the failure to segregate is preserved if raised in an objection to the charge. See Stewart Title Guar. Co. v. Sterling , 822 S.W.2d 1, 10 (Tex. 1991), modified on other grounds by Chapa , 212 S.W.3d at 313-14. But there is as yet no consistent rule about when an objection to the failure to segregate attorneys' fees must be raised in a case tried without a jury.
Some courts have held that the objection must be raised when the fee testimony and billing records are offered as evidence. See, e.g. , Lost Creek Ventures, LLC v. Pilgrim , No. 01-15-00375-CV, 2016 WL 3569756, at *10 n.1 (Tex. App.-Houston [1st Dist.] June 30, 2016, no pet.) (mem. op.) ("When Pilgrim's counsel testified about fees and offered billing records into evidence, the Epsteins failed to object that this proof did not segregate fees attributable to Pilgrim's contract and statutory claims. Thus, they waived this issue on appeal."); In re M.G.N. , 491 S.W.3d 386, 409 (Tex. App.-San Antonio 2016, pet. denied) (op. on reh'g) ("Generally, a party waives any complaint regarding the failure to segregate fees if the complaining party fails to object during the testimony in support of attorney's fees.").
Some courts, including this one, have held that an objection to the failure to segregate can be raised in a post-judgment motion. See, e.g. , Clearview Props., L.P. v. Prop. Tex. SC One Corp. , 287 S.W.3d 132, 143 n.4 (Tex. App.-Houston [14th Dist.] 2009, pet. denied) ("[I]n a bench trial, failure to segregate can be preserved by a *909 post-judgment motion, as was done here."); accord , Arellano v. Don McGill Toyota of Katy, Inc. , No. 14-09-00961-CV, 2011 WL 345869, at *5 (Tex. App.-Houston [14th Dist.] Feb. 3, 2011, no pet.) (mem. op.).
Some courts-again including this one-have held that a post-judgment motion does not preserve the complaint. See e.g. , Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C. , No. 14-08-00352-CV, 2009 WL 1795037, at *7 (Tex. App.-Houston [14th Dist.] June 25, 2009, no pet.) (mem. op.) (holding that the complaint of failure to segregate was waived where it was not raised until after the trial court granted summary judgment awarding attorney's fees); see also Huey-You v. Huey-You , No. 02-16-00332-CV, 2017 WL 4053943, at *2 (Tex. App.-Fort Worth Sept. 14, 2017, no pet.) (mem. op.) ("In a bench trial, the objection that attorney's fees are not segregated as to specific claims must be raised before the trial court issues its ruling."); Lawson v. Keene , No. 03-13-00498-CV, 2016 WL 767772, at *5 (Tex. App.-Austin Feb. 23, 2016, pet. denied) (sub. mem. op.) ("Raising the segregation issue for the first time in a motion for new trial does not preserve error.").
Sometimes a combination of holdings is found even in a single case. See, e.g. , Bos v. Smith , 492 S.W.3d 361, 385-86 (Tex. App.-Corpus Christi 2016, pets. pending) (holding that a request for additional findings of fact and conclusions of law did not preserve a complaint of failure to segregate because the trial court "was never asked to compel [the proponent] to present evidence segregating recoverable from nonrecoverable fees"; the reviewing court nevertheless reached the same complaint when phrased as a challenge to the legal and factual sufficiency of the evidence, for which there are no preservation requirements in nonjury trial).
We need not resolve the conflicts in the case law to determine whether, under our own precedent, the complaint of failure to segregate was preserved, because even our conflicting cases allow a party to preserve the complaint before the cause is submitted to the trier of fact. Zhao and Home Comfortable Supplies state on appeal that they raised this complaint in a post-judgment motion to modify,[4] but it was in their counsel's closing argument that they first pointed out Cooper and Bonner's failure to segregate fees, stating, "They also put on evidence of attorney's fees, but they didn't talk about any of the ... factors that are necessary for an award of attorney's fees. They also didn't segregate their attorney's fees. So under the case law, that is actually no evidence of attorney's fees."[5]
We conclude that this statement, made before the case was submitted to the factfinder, preserved the complaint that Cooper and Bonner failed to segregate attorney's *910 fees. This conclusion is consistent both with our prior holding that such a complaint must be raised before fees are awarded, see Red Rock Props. , 2009 WL 1795037, at *7, and our cases permitting a fee-segregation complaint to be raised in a post-judgment motion. See, e.g. , Arellano , 2011 WL 345869, at *5 ; Clearview Props. , 287 S.W.3d at 143 n.4. This result also is consistent with the many cases stating that, in a jury trial, the complaint can be preserved by a charge objection, that is, before the case is submitted to the jury. See, e.g. , Sterling , 822 S.W.2d at 10 ; see also Ihnfeldt v. Reagan , No. 02-14-00220-CV, 2016 WL 7010922, at *17 (Tex. App.-Fort Worth Dec. 1, 2016, pet. denied) (mem. op.) (holding the issue is preserved by objection during testimony or objection to the charge); In re A.M.W. , 313 S.W.3d 887, 893 (Tex. App.-Dallas 2010, no pet.) (same); McCalla v. Ski River Dev., Inc. , 239 S.W.3d 374, 383 (Tex. App.-Waco 2007, no pet.) (same); Cullins v. Foster , 171 S.W.3d 521, 535-36 (Tex. App.-Houston [14th Dist.] 2005, pet. denied) (same). By raising the complaint before the case is submitted to the factfinder, the failure to segregate can be addressed without the need for a new trial.[6] The record further shows that the trial court was aware of the nature of the complaint and implicitly ruled on it by issuing a factual finding, discussed in the next section, directed to the question of whether Cooper and Bonner were required to segregate their attorneys' fees.
B. Preservation on Appeal
In Finding of Fact No. 62, the trial court stated, "All of the services rendered by the attorneys representing [Cooper and Bonner] in this case reasonably related to or were intertwined with services rendered in pursuing the causes of action on which relief is granted in their favor." Cooper and Bonner assert that Zhao and Home Comfortable Supplies have waived their complaint by failing to challenge this finding on appeal. We disagree.
In Zhao and Home Comfortable Supplies' brief, they expressly state that they challenge "Findings of Facts 60, 61, and 62." Finding No. 60 states that Cooper and Bonner incurred attorneys' fees in prosecuting claims against Zhao and Home Comfortable Supplies, and Finding No. 61 states that the "attorney fees reasonably and necessarily incurred by [Cooper and Bonner] in this case total $63,755.00." (emphasis added).
Zhao and Home Comfortable Supplies also have briefed the issue on appeal. They argue that Cooper and Bonner's "evidence supporting attorneys' fees shows that Plaintiff[s] [are] trying to recover for fees incurred pursuing these other Defendants." Zhao and Home Comfortable Supplies also correctly state that "[i]f the Plaintiff[s] pursued any claims for which attorneys' fees are not recoverable, the attorney must offer evidence that the fees for those claims were segregated and were not included in the calculation method," and that this is true "[e]ven if the attorney spent only a nominal amount of time on a claim for which fees are not recoverable...." See Chapa , 212 S.W.3d at 313-14 ; Arlington Home, Inc. v. Peak Envtl. Consultants, Inc. , 361 S.W.3d 773, 784 (Tex. App.-Houston [14th Dist.] 2012, pets. denied). Finally, they correctly point out that "[m]ost of Plaintiffs' causes of action were *911 causes of action for which attorneys' fees are not recoverable," and yet, Cooper and Bonner did not segregate their fees.
The question of whether Cooper and Bonner were required to segregate their fees accordingly is properly before us for review.
C. Fee Segregation Required
Absent an authorizing contract or statute, a party is responsible for its own attorneys' fees. See Chapa , 212 S.W.3d at 310-11. Questions of whether a contract or statute authorizes fee-shifting are questions of contract or statutory construction, which generally are decided by courts as questions of law. See In re Lesikar , 285 S.W.3d 577, 583 (Tex. App.-Houston [14th Dist.] 2009, orig. proceeding). On the other hand, the extent to which fees for legal services are capable of segregation is a mixed question of law and fact. See Chapa , 212 S.W.3d at 312-13 ; CA Partners v. Spears , 274 S.W.3d 51, 81 (Tex. App.-Houston [14th Dist.] 2008, pet. denied). The burden is on the party seeking to recover attorneys' fees to show that segregation is not required. Clearview Props. , 287 S.W.3d at 144 (citing CA Partners , 274 S.W.3d at 81 ).
Cooper and Bonner's attorney-fee evidence consisted of little more than a page of testimony from their attorney Hugh Plummer and a billing statement. Plummer testified only to the "total legal fees in this case," and of the few references in the billing statement to particular causes of action, most refer to claims for which attorney's fees are not recoverable.
There is no evidence that the fees cannot be segregated. To the contrary, here, as in Chapa , "it cannot be denied that at least some of the attorney's fees are attributable only to claims for which fees are not recoverable." See Chapa , 212 S.W.3d at 314. For example, ten days before the case was tried to the bench, Cooper and Bonner filed a first amended proposed jury charge. Forty of the forty-two questions[7] in the proposed charge concern claims against defendants against whom Cooper and Bonner did not prevail,[8] or to causes of action on which they did not prevail,[9] or claims by plaintiffs who did not prevail.[10] The judgment shows that Cooper and Bonner succeeded in some claims against Zhao and Home Comfortable Supplies, but the trial court's findings of fact establish that at least some of the successful claims were torts for which attorneys' fees are not recoverable. The trial court nevertheless erroneously awarded all of the attorneys' fees for the services of Cooper and Bonner's trial counsel, apparently on the ground that all of the legal services were "reasonably related to or were intertwined with services rendered in pursuing the causes of action on which relief is granted."[11]
We sustain Zhao and Home Comfortable Supplies' third and fourth issues.
V. CONCLUSION
Although the record does not show that the trial court awarded punitive damages *912 based solely on actual damages awarded for breach of contract, it does establish that Cooper and Bonner were required to segregate their attorneys' fees and failed to do so. We reverse the portion of the judgment awarding attorneys' fees, affirm the judgment in all other respects, and remand the cause to the trial court for reassessment of attorneys' fees in accordance with Chapa .

Cooper's company is Cooper & Carville, Inc., and Bonner's company is Bonner International Holdings, L.L.C. The parties do not distinguish between Cooper and Cooper's company or between Bonner and Bonner's company, so we will not do so.

It is not clear how the parties arrived at these figures in the written agreement.

Zhao and Home Comfortable Supplies do not complain of the trial court's award of both punitive damages, which are predicated on Cooper's and Bonner's proof of actual damages caused by a fraudulent or malicious tort, and attorneys' fees, which are predicated on Cooper's and Bonner's proof of actual damages for breach of contract. Compare Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(1), (a)(2) (West 2015) (exemplary damages for fraud or malice) with ion index="40" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2041.003">id. § 38.001(a)(8) (attorney's fees for breach of contract).

They also mistakenly contend that they "attempt[ed] to move for a directed verdict on attorneys' fees." The motion consists of the single sentence, "Your Honor, at this time I need to make a motion for directed verdict because it may influence who and what I call." The motion presented no grounds for a directed verdict on any issue.

While we encourage appellants to include in their appellate brief a citation showing where in the record the error complained of has been preserved, the Texas Rules of Appellate Procedure do not require it. An appellate court nevertheless must determine whether the complaint was preserved because "[w]hen a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue." Fed. Deposit Ins. Corp. v. Lenk , 361 S.W.3d 602, 604 (Tex. 2012). We accordingly consider the complaint raised in closing argument, even though no party has cited it.

For example, Texas Rule of Civil Procedure 270 states, "When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury."

For the parties' reference, we note that the questions are numbered 1 through 41, with an additional unnumbered question between the fifth and sixth questions.

Those questions concern claims against Paragon, the General Partner, or New Star.

These include a dozen questions regarding claims of civil conspiracy. The record before us contains no pleading asserting such a claim and no findings of conspiracy.

Cooper's and Bonner's respective companies prevailed at trial, but Cooper and Bonner in their individual capacities did not.

Because the issue of attorneys' fees must be remanded, it bears mentioning that this is not the correct standard under Chapa.