**Affirmed in Part, Reversed and Rendered in Part and Opinion filed April 27, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00414-CV

---

**WILLIAM JOSEPH DONNELLY, III, Appellant**

**V.**

**LIESSA ANNE SPECK, Appellee**

---

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 41466**

---

## OPINION

In three issues, appellant William Donnelley ("Father") appeals the trial court's judgment modifying the joint managing conservatorship with respect to his parental rights of Cassandra, his minor daughter.[1] He contends that (1) there was insufficient evidence to support the court's modification order granting appellee,

---

[1] We use a pseudonym to refer to the minor child in this lawsuit. *See* Tex. R. App. P. 9.8.

Liessa Speck ("Mother"), the exclusive rights to make psychiatric decisions with respect to Cassandra, (2) the trial court abused its discretion in failing to require that appellee segregate portions of the attorneys' fees that made up the court's award, and (3) the court abused its discretion in denying a continuance and some of the accommodations that he requested prior to trial. We reverse and render the trial court's award of attorneys' fees, and otherwise affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### The Pleadings

Mother filed a lawsuit seeking to modify the terms of the joint managing conservatorship with Father concerning Cassandra as provided in the 2009 final divorce decree and two subsequent modification orders entered in 2013 and 2018. Pertinent to this appeal, the lawsuit seeks for Mother to retain exclusive rights to make medical decisions for Daughter, alleging that Father's involvement in Daughter's ongoing medical treatment impeded aspects of Cassandra's treatment and presented unnecessary hardships for Mother. Also, alleging that Father failed to participate in counseling that the parties agreed would help mend Father's and Cassandra's relationship, the lawsuit sought that Father be ordered to have such counseling with Cassandra. Among other additional aspects, the lawsuit also sought attorneys' fees.

Father also filed his own pleading which among other claims and allegations, included claims related to counseling with Cassandra.

### Pre-Trial

While the modification lawsuit was pending, prior to the modification trial, the parties filed various motions for enforcement and contempt in connection with child support and custodial arrangements.

2

Also, roughly five months prior to trial, the court held an interview with Cassandra (then age 14), who discussed with the court on the record the challenges in her relationship with Father, including his overbearing concern of her diabetic condition, his monitoring of her blood sugars, and related micromanagement of her diet and exercise. She described one incident that resulted in a physical altercation after she reported that she had consumed a piece of bread. Cassandra testified that Father had interfered with her medical treatment. Cassandra indicated to the court her desire to continue living with Mother as she had throughout her childhood, but also a desire to continue maintaining her relationship and contact with Father.

Though Father made numerous requests for disability findings and accommodations, the request most pertinent to this appeal, filed weeks before trial, was Father's Amended Emergency Request for Accommodation, Request for Clarification, Motion to Compel Discovery, and Request for Continuance ("Emergency Motion"). The court denied the request for continuance but made certain, though not all, accommodations requested.

*The Bench Trial*

The bench trial of the modification lawsuit lasted two days, and comprised of testimony from Mother, Father, and Mother's attorney. Mother and Father both testified about their respective relationships with Cassandra. Mother testified that Father interfered with medical treatments, and that this interfered with her ability to maintain coverage for treatment for Cassandra while in her care.

Cassandra has a primary care physician and other doctors including endocrinologists in Houston. Father testified that when Cassandra visited him in Arizona she had a primary care physician and an endocrinologist in Arizona. To explain why he wanted Cassandra to have a primary care physician in Arizona, he stated:

3

I wanted to ensure that she was in good health before sending her back to her mother. She had some immunizations that were due. I wanted to have her A1c checked, and also she had some blood work done to check her kidney function.

Father also was cross-examined about his monitoring of Cassandra's carbohydrate intake, his physical altercation with Cassandra, and an event where he called the Tucson police that resulted in Cassandra's arrest.

During the first day of trial, Mother's lawyer, Denise Lewis, testified on the subject of her attorneys' fees on the case up to that point. Lewis testified that she was a 20-year lawyer practicing most of her careering in the area of family law, and that her hourly rate was $175 per hour. Mother testified about an invoice that she was provided for Lewis's work. The invoice was admitted into evidence and contained multiple entries related to work on enforcement actions filed by the parties.

### The Court's July 16, 2021 "Order in a Suit to Modify Parent Child Relationship"

At the conclusion of trial, the court issued an order modifying the joint managing conservatorship so that Mother retained exclusive rights to medical and psychiatric decisions for Cassandra. The order entitled Father to stay informed of these decisions and required Mother to consult with Father in advance. The order also entitled Father the right to counseling with Cassandra at Father's election and allowed Father to choose the counselor. Finally, the order contained a provision requiring Father to pay Mother $25,712.50 in attorneys' fees.

### Post-Judgment

Father timely requested and the trial court issued findings of fact and conclusions of law.

Father also timely moved for new trial and modification of the judgment on the subject of attorneys' fees. In arguing that Mother's counsel had failed to

segregate her fees, appellant pointed out that many of her entries were related to enforcement motions brought by the parties. At the hearing on Father's motion to modify, the court announced that it would modify the judgment with respect to attorneys' fees, and postponed a determination with respect to at least one enforcement matter. The Court did not sign an order until after expiration of its plenary power.

## II. MODIFICATION

In Father's first issue, he argues that the evidence before the trial court was legally and factually insufficient to support the finding that Mother should have the exclusive right to make all psychiatric decisions. The issue is whether the court abused its discretion in making the objected-to modification. *Brandon v. Rudisel*, 586 S.W.3d 94, 102 (Tex. App.—Houston [14th Dist.] 2019, no pet.)

We review a trial court's decision to modify an order regarding conservatorship or the terms of possession of and access to each child under an abuse-of-discretion standard. *See Baltzer v. Medina*, 240 S.W.3d 469, 474–75 (Tex. App.—Houston [14th Dist.] 2007, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather function as relevant factors in assessing whether the trial court abused its discretion. *Id.* If some evidence of a substantive and probative character exists to support the trial court's decision, we will find no abuse of discretion. *Id.*; *Brandon v. Rudisel*, 586 S.W.3d 94, 102 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Under his first issue, Father argues that even though Mother's lawsuit sought modifications with respect to the exclusive parental rights regarding medical

treatments, the lawsuit failed to apprise Father and the Court that Mother was seeking a modification granting Mother exclusive rights with respect decisions pertaining to Cassandra's *psychiatric* care. In support of this argument, Father relies on a distinction in the Family Code found under section 153.132, which separately characterizes two exclusive parental rights: the "right to consent to medical, dental, and surgical treatment involving invasive procedures" and "right to consent to psychiatric and psychological treatment." Tex. Fam. Code § 153.132(2) & (3). However, as Mother points out on appeal, section 153.132 is a provision in the Family Code that defines the default exclusive rights to parents appointed as *sole* managing conservators. Section 153.132 does not apply to *joint* managing conservatorships. However, one provision in the Family Code applicable to the joint managing conservatorship involved in this case, section 153.071, requires that the "court *shall* specify the rights and duties of a parent that are to be exercised: (1) by each parent independently; (2) by the joint agreement of the parents; and (3) exclusively by one parent." Tex. Fam. Code § 153.071 (emphasis added). Thus, with respect to joint managing conservatorships, the trial court is duty-bound to specify the rights and duties of each parent. *Id.* Notably, common parlance places the phrase "psychiatric treatment" within the meaning of or as a type of "medical treatment", and yet "psychiatric treatment" is also closely related but distinguishable to "psychological treatment."

Mother's lawsuit explicitly raises issues of modification rights and duties with respect to medical care and psychological counseling. Even if the pleading did not specifically call for a modification of psychiatric care, by calling for modification rights and duties with respect to medical and psychological treatment, the pleadings implicitly prompted the court to discharge its duty to make clear, or "specify" the rights and duties with respect to *psychiatric* care. *See id.* We

conclude that Mother requested that she be awarded those rights in her petition, and the trial court's final order awarding those rights exclusively to Mother conformed to the pleadings and was not an abuse of discretion. *See In Interest of P.A. C*, 498 S.W.3d 210, 216 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)

After reviewing the record on the sufficiency of evidence for modification for psychiatric care, the balance of the testimony showed that, with respect to any parent-child issues that might be a source of needing psychiatric care, Father seemed to be the most trouble in Daughter's life. Though evidence revealed Daughter had some trouble in both homes, the record appeared that Father and Daughter were in greater regular conflict. Father admitted to recommending that Daughter be arrested. Father also had a physical altercation with Daughter. Daughter testified that Father was disruptive to her life. Though evidence demonstrated Father kept a sincere parental concern for Cassandra's health, there was some evidence of a substantive and probative character that Father was likely to intervene inappropriately in Daughter's care. Upon this record, the trial court did not abuse its discretion in finding the modification granting Mother the exclusive rights with respect to Daughter's psychiatric care was supported by evidence and in Cassandra's best interest. *See In Interest of P.A. C*, 498 S.W.3d 210, 220 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)(finding trial court's modification order appropriate when supported by "some evidence of a substantive and probative character").

We therefore overrule Father's first issue.

### III. ATTORNEYS' FEES

In Father's second issue, he argues that the trial court erred in awarding attorneys' fees. First he contends that the trial court erred in failing to require segregation of the fees; and second, asserts sufficiency-of-evidence challenges to

certain discrete components of the fees upon which the court based its award. We reach Father's first point only. As a preliminary matter, we consider Mother's contention that Father failed to preserve his segregation-of-fees complaint for appeal.

*Preservation*

The parties do not dispute that Father first objected to Mother's failure to segregate in his post-trial motion for new trial. We consider the issue whether Father's post-trial motion was timely enough to preserve his segregation issue for appeal–a less than settled issue in our court's own jurisprudence. *See Home Comfortable Supplies, Inc. v. Cooper*, 544 S.W.3d 899, 908–09 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (noting the internal court conflict of authority on this question).

In 2009, this court issued its opinion in *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, announcing that, in a bench trial, the failure to segregate attorneys' fees can be preserved by first raising the issue in a post-judgment motion. *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 145 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) relying on *Amerada Hess Corp. v. Wood Group Prod. Tech.*, 30 S.W.3d 5, 13 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)(implying post-judgment motion could preserve error for bench trial when finding waiver of the objection for failure to object at trial or file a post-judgment motion).

Notwithstanding *Clearview*, a mere six month later, this Court decided *Red Rock Properties 2005, Ltd. v. Chase Home Fin., L.L.C.*, No. 14-08-00352-CV, 2009 WL 1795037, at *7 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet.) which was arguably inconsistent with *Clearview*. In *Red Rock,* a case that makes no reference to *Clearview*, we broadly stated that because the appellant (Red Rock)

8

"failed to object to Chase's failure to segregate attorney's fees at the time in which the evidence of attorney's fees was presented and considered by the trial court, its objection is untimely and, thus, any error is waived." *Id*. at *7.

We might observe a distinction: in one opinion, *Red Rock*, we were concluding that a post-judgment motion challenging segregation of fees is untimely *when following a summary judgment order*, and the other, *Clearview*, we were stating that a post-judgment motion challenging segregation of fees is timely *when following a bench trial*. Whether there's a difference is debatable. For today's case at least, by following the doctrine of horizontal stare decisis, we accept the principal announced in *Clearview* and to the extent *Red Rock*'s broad language poses a conflict, we recognize *Clearview* as controlling with respect to first-time post-judgment fee-segregation challenges following bench trials. Accordingly, we find the issue preserved.

*Did the trial court abuse its discretion in failing to segregate attorneys' fees?*

The need to segregate attorneys' fees is a question of law, while the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *CA Partners v. Spears*, 274 S.W.3d 51, 81 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Chapa,* 212 S.W.3d at 312-13). We first consider whether the trial court was required to segregate attorneys' fees. The undisputed record concerning the attorneys' fees includes the following:

The Court originally ordered Father to pay Mother $25,712.50 in attorneys' fees. This was based on testimony of Mother's own lawyer about her fees, Mother's testimony, and includes reference to a detailed invoice for $17,587.50.

The detailed invoice includes multiple references to work performed for enforcement matters.

9

Attorneys' fees are recoverable for work performed in the course of a modification action under Tex. Fam. Code. § 106.002.

The record at trial and in post-judgment hearings affirmatively shows that a portion of the work upon which attorneys' fees were based included hours devoted to enforcement motions unrelated to the modification proceeding.

The judgment upon which attorneys' fees were provided did not resolve any matters pertaining to enforcement motions, and at a post-judgment hearing, the court openly postponed resolution of pending enforcement matters.

In its findings of fact, the trial court only references evidence related to work performed in connection with the modification action, and does not recite facts segregating that work from work on enforcement matters. In its conclusions of law, the court concludes $25,712.50 to be fair and reasonable.

Thus, the question is whether the court was required to segregate fees for work performed in connection with the enforcement motions from the work performed in connection with the modification. Often in segregation cases a question arises whether *the other claims* tried in tandem with claims upon which attorneys' fees validly are based are also claims upon which attorneys' fees may be validly based. *See Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). Father argues on appeal that attorneys' fees are unavailable for work done pursuant to an enforcement action. Mother argues that attorneys' fees are available for both modification and enforcement. However, we need not reach the question of whether fees are *ever* recoverable in connection with enforcement motions because the enforcement action remained ongoing and was not resolved at the time of the judgment resolving the modification lawsuit and award of attorneys' fees. Because fees on the enforcement motions were not recoverable at the time of the court's fee award, the trial court was required to segregate those fees from the fees

10

awarded on the modification action. *See Lederer v. Lederer*, 561 S.W.3d 683, 703 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The record in this case shows the trial court failed to segregate the fees recoverable for the modification lawsuit from fees that might later be recoverable in connection with the enforcement motions. Accordingly, the trial court abused its discretion.

Because the fees in question were discretionary, we are restrained from remanding for further proceedings; we reverse and render a judgment of no fee award. *See Interest of K.A.M.S.*, 583 S.W.3d 335, 350 (Tex. App.—Houston [14th Dist.] 2019, no pet.)

Accordingly, we sustain appellant's second issue.

## IV. ACCOMMODATIONS

In his third issue, Father complains that the trial court erred in denying certain accommodations that he requested in his emergency motion prior to trial. With reference to his "hip fracture with complications, Type 1 Diabetes with complications, autoimmune disease, and other medical problems" which he contended affected his "concentrating, thinking, sitting, standing, walking, dressing, bending, transitioning movement, performing tasks, and working" Father sought the following relief:

> that the proceedings not continue until his medical condition improves,
>
> reasonable scheduling of the proceedings,
>
> that once his medical condition improves, hearing not last more than three hours and if the hearing would go over three hours that the hearing be continued another day after three hours,
>
> proceedings be staggered by one month (as recommended by his physician), and
>
> a remedy to prevent him from being required to meet a court schedule,

11

deadlines, and requirements that he cannot medically tolerate.

Father attached two exhibits to his motion for accommodation: two letters signed by his primary care physician, dated November 6, 2020, and February 24, 2021. The November letter states that "[Father] has a [history] of hip fracture and has ongoing chronic pain especially made worse with sitting for extended periods of time." Without further explanation, the letter requests "limiting the number of proceedings to once daily for no more than 3 hours at a time and to reasonably allow him to stagger the time between proceedings to a 3-week intervals." The second later states:

> I am concerned about [Father's] health as he is under a great deal of stress with his current medical issues and his labs and symptoms need further evaluation. His stress is causing his health to deteriorate compounded by having to deal with the ongoing demands of court proceedings out of state for custody matters.
>
> My reason for writing this is to request that [Father] be allowed to reduce the requirements for his in-person court appearances to no more than once a month due to his current health issues and the need for him to focus on his medical problems at this time. I would ask the Court to consider this matter to be permanent and to accommodate him in this manner throughout these proceedings.

The trial court promptly held a hearing on Father's emergency motion. At the conclusion of the hearing, the trial court denied Father's request to continue the case and granted some of Father's requested accommodations and denied others. Specifically, the court provided that during the proceedings (which were held on Zoom), Father would be permitted to sit or stand as he pleased and allowed a 15-minute break every hour, that any 3-hour increment of trial be followed by an hour break, and more specifically the trial would start at 9:00 a.m., break for lunch at noon and then resume from 1:00 p.m. to 3:00 p.m.

On appeal, Father generally contends that the trial court should have allowed

12

him a continuance indefinitely to convalesce and should have staggered hearings months apart.

*Analysis*

We review the trial court's ruling on such requests under an abuse of discretion standard. *Schroeder v. Brandon,* 172 S.W.2d 488, 491 (1943) (Texas courts have held that "the discretion vested in the trial court over the conduct of a trial is great."). The trial court is empowered to control its proceedings for efficiency purposes. *See, e.g., Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) ("The record indicates that the judge exercised her broad discretion to 'maintain control and promote expedition.'"); *see Metzger v. Sebek,* 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

However, Father presented very little evidence to support the accommodations he requested. Though he engaged with the court about his request in the hearing, he was not sworn as a witness to offer supporting testimony and he provided no affidavit. Though he had attached two notes from the same doctor, neither note supported his request for a continuance, and the notes only suggested accommodations that would be advisable; neither note stated any accommodation was a medical necessity. The trial court noted in its findings and conclusion that Father agreed that he had not requested such accommodations at work and that Father admitted that he regularly worked eight-hour days. Additionally, Father did not direct the court to any evidence that he was excluded from participation in his trial due to his disability. Upon this record, and particularly in light of the accommodations the trial court did provide to address Father's condition, we cannot conclude the court abused its discretion in failing to provide the additional requested accommodations.

We cannot conclude the trial court abused its discretion in denying the

13

continuance. *Caddell v. Caddell*, 597 S.W.3d 10, 14 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("Generally, when a movant fails to file a written motion for continuance supported by affidavit, we presume the trial court did not abuse its discretion.") *citing Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *see* Tex. R. Civ. P. 251.

Accordingly, we overrule Father's third issue.

## V. CONCLUSION

We affirm the judgment of as it pertains to the modification of Mother's rights and duties, and affirm the trial court's docket-management decisions. However, because the court failed to segregate attorneys' fees on unadjudicated enforcement issues, the trial court's attorneys' fees award is reversed.


/s/ Randy Wilson
   Justice

Panel consists of Justice Bourliot, Justice Hassan and Justice Wilson.

14